M.C. and M.C., Appellants,

v.

NORTHERN INSURANCE COMPANY
OF NEW YORK, Appellee.

No. S–8558.

Supreme Court of Alaska.

April 21, 2000.

Rehearing Denied June 2, 2000.

Mitchel J. Schapira, Anchorage, for Appellants.

David R. Millen and Marc G. Wilhelm, Richmond & Quinn, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

Steven Flory sexually abused Mary Cook,[1] a fifteen-year-old girl who worked under his supervision. Mary and her mother sued Flory for damages; Flory confessed judgment and assigned them his right to pursue a claim against his employer's insurer, Northern Insurance Company of New York, which had denied coverage and had declined to defend Flory. The superior court granted summary judgment in favor of Northern, finding that Flory was not covered by the policy and that Northern had no duty to provide him a defense. The Cooks claim error. But the policy in question expressly excludes coverage for an employee's conduct that causes bodily injury to a co-employee. Because the record establishes that Mary was Flory's co-employee and that her claim against him involved a bodily injury, we affirm the superior court's judgment.

1. We use pseudonyms for the appellants in order to ensure anonymity and to protect their privacy.

## II. FACTS AND PROCEEDINGS

In June 1994, while employed by the Anchorage Daily News as a district manager responsible for newspaper home delivery, thirty-four-year-old Steven Flory engaged in sexual relations with a fifteen-year-old girl, Mary, a home delivery solicitor whom he supervised. The state charged Flory with sexual abuse of a minor in the first degree, an unclassified felony.[2] Flory eventually pleaded no contest to the lesser charge of sexual abuse of a minor in the third degree, a class C felony.[3]

Meanwhile, Mary and her mother, Mildred Cook, filed an action against the Daily News and Flory, bringing claims of assault, battery, seduction, and intentional and negligent infliction of emotional distress against Flory, and vicarious liability, negligent hiring, and improper supervision against the Daily News. The complaint alleged that Flory's acts occurred within the scope of his employment with the Daily News as Mary's direct supervisor.

The Daily News's insurer, Northern Insurance Company of New York, initially informed Flory that no coverage extended to him under the Daily News policies. Northern later offered to provide Flory with representation in the civil case under a reservation of right to contest coverage. Flory accepted the offer. But after Flory entered into a plea bargain and changed his plea to no contest in the criminal case, Northern informed Flory that it would withdraw coverage of his defense in the civil case. Flory then signed a confession of judgment in favor of the Cooks, assigning them his rights to proceed against Northern on the condition that they not pursue the judgment against him.

The Cooks ultimately settled their claims against the Daily News and proceeded against Northern on Flory's assigned claims, alleging that as a Daily News employee, Flory was covered under the newspaper's commercial general liability policy and that Northern had breached its duties to defend and indemnify him. The superior court granted summary judgment in Northern's favor, concluding that Flory was not covered under the Northern policy, that Northern had no duty to defend him, and that his confession of judgment in favor of the Cooks was unenforceable against Northern. The Cooks appeal.

## III. DISCUSSION

### A. The Parties' Arguments

The Cooks principally argue that the trial court erred in granting summary judgment on the question of coverage, contending that the issue of coverage involves questions of fact for the jury. They also contend that regardless of whether Flory was actually covered by the policy, the possibility of coverage required Northern to represent him. Last, they contend that the superior court erred in deciding that the Cooks' confessed judgment against Flory is unenforceable against Northern.

Northern responds that Flory is not covered under the Daily News policy for multiple reasons, any one of which relieved it of its duty to pay under the policy: (1) his acts are excluded from coverage because they are intentional torts; (2) he acted outside the scope of his employment; and (3) his conduct fell within policy provisions excluding Daily News employees from coverage for injury to co-employees. For the same reasons, Northern maintains that it had no duty to defend Flory. Last, Northern insists that even if it did have a duty to defend Flory, it would not necessarily be liable to pay for Flory's settlement with the Cooks.

### B. Standard of Review

This court reviews a grant of summary judgment de novo, applying its inde-

---

**2.** See AS 11.41.434(a)(3)(B) (defining first degree sexual abuse of a minor to include engaging in sexual penetration with a person who is under 16 years of age when the defendant occupies a position of authority in relation to the victim).

**3.** See AS 11.41.438(a)(2) (defining third degree sexual abuse of a minor to include engaging in sexual penetration with a person who is 16 or 17 years old and at least three years younger than the defendant if the defendant occupies a position of authority in relation to the victim).

pendent judgment.[4] We determine whether the parties genuinely dispute any material facts and, if not, whether the undisputed facts entitle the moving party to judgment as a matter of law.[5] If no facts are in dispute, we apply our independent judgment when we interpret the words of a contract.[6]

C. *Even Assuming That Flory Acted Within the Scope of His Employment When He Sexually Abused Mary, Northern's Policy Excluded His Conduct From Coverage Because He Injured a Co–Employee.*

Although the Cooks insist that this case presents multiple questions of fact requiring jury resolution, we disagree because we conclude that the undisputed facts establish that Flory's conduct falls within an exclusion under the policy that Northern issued to the Daily News.

Because the Cooks assert Flory's assigned claim against Northern, they cannot prevail unless they advance an arguable factual theory under which Flory would qualify as "an insured" under the Daily News policies. In Section II.2.a.(1), titled "WHO IS AN INSURED," the Daily News general liability policy specifies that Daily News employees are considered to be insured under the policy only while acting within the scope of their employment and only if their conduct does not cause injury to a co-employee:

Each of the following is also an insured:

a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

However, none of these employees is an insured for

(1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment[.]

The umbrella policy contains a corresponding exclusion:

The insurance provided by this policy does not apply to: . . . . Any employee as an "insured" with respect to "personal injury"[7] to another employee of the same employer injured in the course of such employment.

For present purposes, we may assume, as the Cooks argue, that they have raised genuine issues of material fact supporting their claim that Flory was serving within the scope of his Daily News employment when he abused Mary.[8] But even so, the Cooks advance no factually supported theory under which Flory might qualify for coverage as an insured under the foregoing policy provisions.

Flory's conviction for sexual abuse of a minor precludes him from denying that Mary was his co-employee: Flory's felony conviction was predicated on the position of authority that he occupied in relation to Mary by virtue of her status as a Daily News employee; the record suggests no basis for that authority other than co-employee status.

Moreover, Flory cannot deny that his claim arises from an incident involving bodily injury to Mary:[9] In the civil complaint upon which Flory confessed judgment, the Cooks asserted a claim for bodily injury, alleging

---

4. *See Christensen v. NCH Corp.*, 956 P.2d 468, 474 (Alaska 1998).

5. *See Brady v. State*, 965 P.2d 1, 2 (Alaska 1998).

6. *See National Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 586 (Alaska 1976).

7. The umbrella policy defines "personal injury" to include the general liability policy's definition of "bodily injury."

8. *But see Veco, Inc. v. Rosebrock*, 970 P.2d 906, 924 n. 36 (Alaska 1999) ("[I]mposing vicarious liability under a scope of employment theory absent at least a partial purpose on the part of the employee to serve the employer seems unjust-

ified.") (modifying *Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344, 348 (Alaska 1990)).

9. Although Mary's mother brought two claims against Flory in her own right, these claims were nonetheless predicated on Flory's acts of sexual abuse. Because Mildred Cook's independent claims were ultimately based on conduct by Flory that caused bodily injury to Mary, it seems plausible that they too might fall within the co-employee exclusion, even though Mildred Cook herself was not a Daily News employee. But we need not resolve this issue here. The Cooks did not separately discuss Mildred Cook's independent claims in their summary judgment pleadings, and they do not mention them on appeal. We therefore decline to consider these claims.

that Flory committed assault and battery. Flory's conviction of sexual abuse, based on the same incident as the civil complaint, also establishes that he caused bodily injury.[10] And in any event, the Cooks could not sustain Flory's claim against Northern without alleging and proving bodily injury, since, under the undisputed facts of this case, bodily injury is the only potential basis for insurance coverage.[11]

The Cooks argue that Flory's acts of sexual abuse did not necessarily cause "expected or intended" "bodily injury" to Mary. But that issue is material only to the question of whether Flory's acts would be excluded from coverage under Section I.2.a of the policy.[12] As shown by the language from policy Section II.2.a.(1) quoted above, whether Flory was an insured under the policy when he injured his co-employee is an entirely separate question. Because we find that the exclusion at Section II.2.a.(1) of the policy removes Flory from among those insured, we need not reach the issue of whether he intended or expected to cause Mary bodily injury when he sexually abused her.[13] Since the undisputed facts establish that Flory was not among those insured under the policy, we uphold the superior court's order granting summary judgment to Northern on the Cooks' breach of coverage claim.[14]

D. *Northern Had No Duty to Defend Flory, Because There Was No Possibility That He Was Insured Under the Daily News Policy for His Sexual Abuse of Mary.*

The Cooks separately dispute Northern's decision to withdraw its defense of Flory, arguing that because it violated its duty to defend, Northern has forfeited its right to argue the merits of any judgment against him. The Cooks contend that if there was any "possibility of coverage" of Flory's claim, Northern's duty to defend him was triggered, regardless of whether coverage was ultimately determined to exist.[15]

But under this standard Northern had no duty to defend Flory because, under the facts alleged in the Cooks' complaint against Flory and otherwise known by

---

**10.** It is immaterial that the offense of sexual abuse of a minor does not require the state to prove nonconsensual sexual contact. The Alaska Criminal Code classifies the crime for which Flory was convicted—sexual abuse of a minor in the third degree—as an offense against the person. *See* AS 11.41.438(a)(2). Alaska law regards the victim's minority as precluding meaningful consent. *See, e.g., Yearty v. State*, 805 P.2d 987, 994 (Alaska App.1991) ("Virtually every case involving sexual abuse of a child is, in this respect, nonconsensual; because no case of child sexual abuse involves conduct that is truly consensual, it is difficult to conceive of a situation in which an act of sexual abuse on a child would not also be an act of sexual assault.").

**11.** The General Liability Policy provides coverage for "bodily injury," "property damage," "personal injury," and "advertising injury." The underlying facts obviously do not involve an "advertising injury," and the Cooks claimed no "property damage." Furthermore, the policy's narrow definition of "personal injury" precludes coverage on that basis:

"Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
  a. False arrest, detention or imprisonment;
  b. Malicious prosecution;
  c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

  d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
  e. Oral or written publication of material that violates a person's right of privacy.

This leaves "bodily injury" as the only arguable basis for coverage. The policy defines "bodily injury" as follows:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**12.** That section reads: "This insurance does not apply to: [¶] a. 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

**13.** *But see Yearty*, 805 P.2d at 994.

**14.** Given our conclusion that this exclusion barred coverage, we need not consider other potentially applicable exclusions argued by Northern.

**15.** *See State, Dep't of Transp. & Pub. Facilities v. State Farm Fire & Cas. Co.*, 939 P.2d 788, 792 (Alaska 1997) (noting that duty to defend is triggered if at least one cause of action alleged in complaint presents a "possibility of coverage").

Northern when it decided to withdraw its defense, Flory could not conceivably have been covered by the policy. Northern withdrew its defense only after Flory pleaded no contest to a felony involving bodily injury to a co-employee. Because at that juncture Northern could fairly conclude that the suit against Flory was not "within or potentially within" the policy's coverage, Northern had no further duty to defend Flory.[16]

Since we have held that the policy excluded Flory from coverage and that Northern had no separate duty to defend him, we have no need to address the superior court's independent determination that the Cooks' judgment against Flory is unenforceable against Northern.

## IV. CONCLUSION

We AFFIRM the superior court's judgment.

FABE, Justice, not participating.

---

**16.** *See Afcan v. Mutual Fire, Marine & Inland* Ins. Co., 595 P.2d 638, 645 (Alaska 1979).