*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LENNIE LANE III, | ) | |
| | ) | Supreme Court No. S-14782 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-08545 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JOHN BALLOT, as Personal | ) | |
| Representative of the Estate of | ) | No. 6929 - July 25, 2014 |
| Annie Ballot, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Lennie Lane III, pro se, Kenai, Appellant. Steven D. Smith, Law Offices of Steven D. Smith, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

Lennie Lane appeals from the superior court's grant of summary judgment against him in a personal injury case. The superior court applied the doctrine of collateral estoppel to find that Lane's criminal conviction for assaulting Annie Ballot established that he was liable to her in tort. Lane challenges the sufficiency of the

evidence of his criminal conviction. He also challenges the application of collateral estoppel, arguing that (1) his conviction was not final because it was on appeal at the time the court relied on it, and (2) the verdict against him — "guilty but mentally ill" — was not sufficient to establish the elements of the crime of which he was convicted. We affirm the superior court's judgment.

## II.    FACTS AND PROCEEDINGS

Annie Ballot filed suit against Lennie Lane in superior court.[1] Both she and Lane were represented by counsel. Ballot's complaint alleged that Lane "without provocation attacked the plaintiff, raped her[,] and beat her so severely that she was comatose for an extended period of time and unable to conduct her personal affairs for several months." The complaint further alleged that "[a]s a result of the aforesaid actions the defendant [Lane] was convicted of A[S] 11.41.410(a)(1), [AS] 11.41.210(a)(2)[,] and AS 11.56.610."[2] Finally, the complaint alleged that "[a]s a direct and proximate result of the conduct of the defendant, . . . Ballot suffered pain and suffering and humiliation both past and future for which she is entitled to general damages from the defendant in an amount to be determined at trial." Lane, through his attorney, admitted all these allegations in his answer.

During a status hearing in March 2012, Lane's attorney repeatedly acknowledged that Lane had been convicted of crimes based on the events on which Ballot's civil claims were based; but Lane, participating telephonically, seemed to

---

[1]    Annie Ballot died after this suit was filed. The parties orally agreed at a hearing in the superior court that her personal representative, John Ballot, could be substituted as a party and the caption amended accordingly. The superior court so ordered, but the parties continued to use the case's original caption on appeal. We amend the caption on our own order to reflect the superior court's order.

[2]    The three listed charges are, respectively, sexual assault in the first degree, assault in the second degree, and tampering with physical evidence.

disagree. The superior court advised that "in an abundance of caution" Ballot should file a motion for summary judgment on liability, and Lane and his attorney could decide how to respond. The superior court then set a damages hearing for the week of May 14.[3]

Ballot filed her summary judgment motion on March 27 but failed to support it with any evidence. Lane apparently filed no opposition, but the superior court nonetheless denied the motion without prejudice, concluding that under Alaska Civil Rule 56, "[a]bsent an affidavit and/or copy of [the] criminal judgment, [the attorney's] unsupported allegation [in the motion] is inadequate for summary judgment."

At the damages hearing on May 15, Ballot's attorney had yet to acquire documentary evidence of Lane's conviction. He argued that the admissions in Lane's answer were sufficient to establish the facts necessary for liability, though he acknowledged Lane's apparent position that the answer had been drafted without his approval. The superior court again relied on Civil Rule 56 for the proposition that a motion for summary judgment must be supported by evidence; the judge suggested that a copy of the judgment of conviction would be sufficient to establish Lane's liability. The judge asked Lane's attorney for the criminal case number, then said that he would send his administrative assistant to retrieve the file, and if it confirmed the fact of conviction he would take judicial notice of it. Lane's attorney then offered to stipulate to his client's conviction for the rape and assault. The superior court accepted the stipulation and on that basis granted summary judgment to Ballot on the issue of liability, a conclusion it later restated in written findings and conclusions. After taking testimony

---

[3]     A few days after the status hearing, Lane filed a motion for "consideration for hearing," bearing the case number of this case but listing Lane as the plaintiff and "Superintendent Debbie Miller[,] Department of Corrections" as the defendant. It is not clear what relief the motion requested; it appears that Lane was asking to be interviewed by the police about his claims that four other inmates admitted having "framed [him] into a life sentence."

and other evidence on Ballot's damages, the superior court entered judgment against Lane for $149,989.25 plus interest, costs, and attorney's fees.

Lane appeals the grant of summary judgment on liability.

## III. STANDARDS OF REVIEW

In reviewing summary judgment orders, we apply our independent judgment to determine whether there are any genuinely disputed issues of material fact.[4] If there are not, we decide de novo whether the moving party is entitled to summary judgment as a matter of law.[5]

"The applicability of the doctrine of collateral estoppel is a question of law subject to independent review."[6] We therefore review de novo whether the elements of the doctrine are met. In cases where collateral estoppel is applied offensively, and especially where mutuality between the parties is lacking, the trial court may decline to apply the doctrine to avoid unfair results.[7] We review this secondary decision for abuse of discretion.[8]

---

[4] *M.C. v. N. Ins. Co. of N.Y.*, 1 P.3d 673, 674-75 (Alaska 2000).

[5] *Id.*

[6] *Rapaport v. Tesoro Alaska Petroleum Co.*, 794 P.2d 949, 951 (Alaska 1990).

[7] *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 247-48 (3d Cir. 2006).

[8] *Harris v. Governale*, 311 P.3d 1052, 1057 (Alaska 2013).

## IV.  DISCUSSION

A criminal conviction for a serious crime has a collateral estoppel effect in a subsequent civil action relying on the same set of operative facts.[9]  Thus "a criminal conviction resulting from a jury trial could be introduced as 'conclusive proof' (rather than merely persuasive evidence) 'of the facts necessarily determined.' "[10]  A criminal conviction precludes relitigation of "any element of a criminal charge" for which a litigant is convicted.[11]  The doctrine applies regardless of whether the convicted person is the plaintiff[12] or defendant[13] in the civil action.

Because the superior court found as an undisputed fact that Lane was convicted of crimes based on the same facts alleged in Ballot's civil complaint, it applied the collateral estoppel doctrine to preclude Lane from contesting his liability for Ballot's claims.  In reviewing this summary judgment order de novo, we consider (a) whether the court was correct in finding that the conviction was not a genuinely disputed fact, and (b) if the conviction was undisputed, whether the court was correct to apply collateral estoppel and grant summary judgment on these facts, given (1) Lane's pending criminal appeal, and (2) the jury's verdict that Lane was "guilty but mentally ill."  We hold that

---

[9]  *Scott v. Robertson*, 583 P.2d 188, 193 (Alaska 1978).  A nolo contendere or guilty plea has the same effect as a conviction following trial.  *Lamb v. Anderson*, 147 P.3d 736, 744 (Alaska 2006).

[10]  *Lamb*, 147 P.3d at 739 (quoting *Scott*, 583 P.2d at 193 & n.27).

[11]  *Pedersen v. Blythe*, 292 P.3d 182, 185 (Alaska 2012).

[12]  *See Howarth v. Alaska Pub. Defender Agency*, 925 P.2d 1330, 1333 (Alaska 1996).

[13]  *See Lamb*, 147 P.3d at 742; *Wyatt v. Wyatt*, 65 P.3d 825, 831-32 (Alaska 2003).

the fact of conviction was not genuinely disputed and that Ballot was entitled to summary judgment on Lane's liability.

## A. The Fact Of Lane's Criminal Conviction Was Not Genuinely Disputed.

Lane argues that the fact of his conviction was genuinely disputed because it was not supported by evidence. We decide de novo whether a genuine issue of material fact precludes summary judgment,[14] and we conclude that Lane's argument lacks merit.

It is true that Ballot never produced a certified copy of Lane's conviction in support of her motion for summary judgment, as the superior court anticipated she would do.[15] But the record clearly shows that Lane's attorney stipulated to the fact of conviction when the judge asked his assistant to retrieve the criminal case file, which meant that the fact of conviction was going to be established in a matter of minutes regardless.[16] The court's reliance on the attorney's stipulation was not error. Lane's attorney having formally appeared for him, the attorney was authorized to speak and act

---

[14] *M.C. v. N. Ins. Co. of N.Y.*, 1 P.3d 673, 674-75 (Alaska 2000).

[15] Following the superior court's prudent course, we assume arguendo that Lane did not authorize the key admissions in his answer and that the fact of conviction therefore had to be proven independently. *Cf. Darnall Kemna & Co. v. Heppinstall*, 851 P.2d 73, 76 (Alaska 1993) ("The general rule provides that admissions made in the pleadings are conclusively established." (citing 9 JOHN H. WIGMORE, WIGMORE ON EVIDENCE § 2590, at 822 (Chadbourn rev. 1981))).

[16] Courts may take judicial notice of criminal convictions pursuant to Alaska Rules of Evidence 201 and 203. *See Dale H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 235 P.3d 203, 206 n.3 (Alaska 2010) (taking notice of judgment involving crime of domestic violence, where judgment "is not part of the appellate record" but "is not subject to reasonable dispute and is capable of ready determination"); *Lemon v. State*, 522 P.2d 160, 162-63 (Alaska 1974) (upholding the judge's authority, in a prosecution for escape, to take judicial notice of the conviction for which the defendant was serving his sentence at the time of the escape).

for him.[17] And "admissions of fact by counsel during the course of the trial are binding on [counsel's] client, if they are made with the express purpose of dispensing with the formal proof of some fact at the trial, and are thus used as a substitute for legal evidence of the fact."[18] That is what occurred here: to spare the court and the parties the momentary diversion of retrieving records that were nearby and readily available, Lane's attorney stipulated to a fact he knew could not reasonably be disputed.[19]

### B. Ballot Was Entitled To Summary Judgment On Liability.

Lane also challenges the application of collateral estoppel in this case. He argues that he had two defenses that he was wrongly precluded from presenting because of the superior court's reliance on his criminal conviction to establish his liability on Ballot's tort claims.[20] Neither of his arguments has merit.

---

[17] *See* AS 22.20.040(b) ("When a party appears by attorney, the written proceedings shall be in the name of the attorney, who is the sole representative of the client as between the client and the adverse party."); AS 22.20.050 ("An attorney may . . . bind the attorney's client in any of the proceedings in an action or proceeding by agreement filed with the clerk or entered upon the journal of the court, and not otherwise.").

[18] *Beaulieu v. Elliott*, 434 P.2d 665, 669 (Alaska 1967) (footnotes omitted).

[19] Even if the superior court had erred by accepting the stipulation, any error would be harmless, as the court was prepared to take judicial notice of the conviction under Evidence Rule 201(d) once the criminal file was brought to the courtroom. Lane cannot have been prejudiced by his attorney's stipulation to a fact that was about to be established in any event.

[20] We recognize that Lane did not raise these arguments below in response to Ballot's motion for summary judgment. Although the arguments could be considered waived, we address them because of the unusual circumstances of this case: not only Lane's current pro se status, but also the on-record disagreements between Lane and his attorney about how they should proceed in the superior court.

**1. Lane's pending criminal appeal does not bar the application of collateral estoppel.**

Lane argues that collateral estoppel should not apply because his criminal conviction is on appeal. But "[a] pending appeal of the criminal conviction 'is irrelevant for the purposes of res judicata and collateral estoppel.' "[21] If Lane were to successfully challenge his conviction in the course of a criminal appeal or a petition for post-conviction relief, he is not without remedy in this case; we have repeatedly recognized that "a 'motion to vacate any judgment resting on the preclusive effect of the earlier judgment following its reversal would provide adequate relief' if an appeal were later successful."[22]

**2. Lane's "guilty but mentally ill" conviction is subject to the collateral estoppel doctrine.**

Lane also argues that Ballot should not have the benefit of collateral estoppel in this case because the jury in his criminal case found him "guilty but mentally ill" rather than simply guilty. By statute, however, "[a] defendant found guilty but mentally ill is not relieved of criminal responsibility for criminal conduct."[23]

The law thus creates a clear distinction in mental state between "guilty but mentally ill" convictions and "not guilty by reason of insanity" acquittals. Under AS 12.47.030(a), the "guilty but mentally ill" statute under which Lane was convicted,

> [a] defendant is guilty but mentally ill if, when the defendant engaged in the criminal conduct, the defendant lacked, as a result of a mental disease or defect, the substantial capacity

---

[21] *Pedersen v. Blythe*, 292 P.3d 182, 185 (Alaska 2012) (quoting *Wyatt v. Wyatt*, 65 P.3d 825, 831 (Alaska 2003)).

[22] *Id.* at 185 n.19 (quoting *Wyatt*, 65 P.3d at 831); *see also* Alaska R. Civ. P. 60(b)(5).

[23] AS 12.47.030.

either to appreciate the wrongfulness of that conduct or to conform that conduct to the requirements of law. A defendant found guilty but mentally ill is not relieved of criminal responsibility for criminal conduct and is subject to the provisions of AS 12.47.050.[24]

Under AS 12.47.010(d), by contrast, a defendant who asserts insanity as a defense will, if successful, receive a "not guilty" verdict; the defendant is acquitted. To establish the insanity defense the defendant must show that "when the defendant engaged in the criminal conduct, the defendant was unable, as a result of a mental disease or defect, to appreciate the nature and quality of that conduct."[25]

Thus, in sum, a defendant who is found guilty but mentally ill "lacked . . . the substantial capacity either to appreciate the wrongfulness of [the criminal] conduct or to conform that conduct to the requirements of law,"[26] whereas one acquitted by reason of insanity "was unable . . . to appreciate the nature and quality of that conduct."[27] In an assault case, for example, a defendant who is guilty but mentally ill may know he is assaulting the victim but either does not know it is wrong or cannot control his

---

[24] The referenced statute, AS 12.47.050, requires the Department of Corrections to provide mental health treatment to certain offenders during their incarceration and mandates that if or when treatment ends, the offenders must serve the remainder of their sentences.

[25] AS 12.47.010(a).

[26] AS 12.47.030(a).

[27] AS 12.47.010(a)

actions.[28] A defendant who is not guilty by reason of insanity may not even know he is assaulting the victim.[29]

The distinction governs this case. Lane was convicted of sexual assault in the first degree[30] and assault in the second degree.[31] By its "guilty but mentally ill" verdict, the jury found beyond a reasonable doubt that Lane knew (or should have known, for purposes of the assault conviction) that he was beating and raping another person, even if he did not know that what he was doing was wrong.

The "guilty but mentally ill" verdict on these charges establishes the facts necessary to prove Lane's liability in tort. Ballot's complaint does not specify a cause

---

[28]    *See Lord v. State*, 262 P.3d 855, 860-61 (Alaska App. 2011) (explaining why mother was properly found guilty but mentally ill when she knew she was killing her sons but thought she was saving them from evil and sending them to heaven, thus failing to appreciate the wrongfulness of her conduct).

[29]    "An example of a person who could successfully establish the elements of the revised insanity defense is the defendant who, as a result of a mental disease or defect, is unable to realize that he is shooting someone with a gun when he pulls the trigger on what he believes to be a water pistol, or a murder defendant who believes he is attacking the ghost of his mother rather than a living human being." *State v. Patterson*, 740 P.2d 944, 946 n.8 (Alaska 1987) (quoting Commentary & Sectional Analysis for the 1982 Amendments to Alaska Law on Criminal Law and Procedure and the Revised Criminal Code, House Journal Supp. No. 64 at 4, 1982 House Journal 2318.)

[30]    "Knowingly" is the implied mens rea required for a conviction under AS 11.41.410(a)(1) (sexual assault in the first degree). To convict Lane under AS 11.41.410(a)(1), the jury must have found that he knowingly engaged in sexual intercourse and recklessly disregarded his victim's lack of consent. *See Reynolds v. State*, 664 P.2d 621, 625 (Alaska App. 1983).

[31]    "[R]ecklessly" is the mens rea required for a conviction under AS 11.41.210(a)(2) (assault in the second degree). To convict Lane under AS 11.41.210(a)(2), the jury must have found that he "recklessly cause[d] serious physical injury to another person."

of action, but as reasonably read it alleges tortious conduct causing physical harm; this could include assault and battery, civil rape, and other intentional, reckless, or negligent acts for which civil liability may be imposed. In civil cases, "[b]attery occurs when an actor intends to cause harmful or offensive contact with another and an offensive contact results";[32] "one need not intend injury but must intend to cause contact."[33] Intent for tort purposes also includes "knowing that the consequence is substantially certain to result."[34] We have defined recklessness for both civil and criminal purposes as "unreasonably disregarding a known risk of substantial physical harm to another."[35] The jury's verdict of "guilty but mentally ill" on the criminal charges of sexual assault in the first degree and assault in the second degree established beyond a reasonable doubt that Lane knowingly "engage[d] in sexual penetration with another person without consent of that person"[36] and that he "recklessly cause[d] serious physical injury to another person."[37] These findings satisfy the elements of several different tort causes of action for which Ballot could recover against Lane, including assault and battery and civil rape.[38]

---

[32] *Maddox v. Hardy*, 187 P.3d 486, 498 (Alaska 2008).

[33] *DeNardo v. Corneloup*, 163 P.3d 956, 960 (Alaska 2007).

[34] *See* RESTATEMENT (THIRD) OF TORTS § 1 (2010).

[35] *Lamb v. Anderson*, 147 P.3d 736, 745 (Alaska 2006).

[36] AS 11.41.410(a)(1).

[37] AS 11.41.210(a)(2).

[38] *See Pletnikoff v. Johnson*, 765 P.2d 973, 979 n.1 (Alaska 1988) (Matthews, C.J., dissenting) (stating that "[t]he essential elements of sexual assault in the first degree . . . are also the essential elements of the tort of rape").

Lane cites *Burcina v. City of Ketchikan*[39] in support of his argument that a "guilty but mentally ill" verdict has no collateral estoppel effect. The plaintiff in *Burcina* pleaded nolo contendere to arson.[40] He then brought a civil suit against his psychiatrist and treatment center, alleging that their negligent treatment of him "aggravated his mental illness and . . . caused him to set the fire" and they were therefore liable for his emotional distress and loss of income while imprisoned.[41] The defendants moved for summary judgment on public policy grounds, arguing that the plaintiff's claims were barred because they were based on his own illegal acts.[42] The plaintiff argued in opposition that there was a disputed fact as to whether he was legally insane at the time of the arson (and if he was, that public policy could not bar his claims).[43]

We held that collateral estoppel applied and the plaintiff could not relitigate his mental state, because the nolo contendere plea required that he admit to the requisite intent to commit arson.[44] In a phrase Lane points to in his brief, we observed in *Burcina* that "had [the plaintiff] wished to avoid these collateral consequences of his nolo contendere plea, he could have asserted the defenses of either insanity, or mental disease or defect, or could have entered a plea of guilty but mentally ill."[45] Lane urges us to

---

[39]     902 P.2d 817 (Alaska 1995)

[40]     *Id.* at 819.

[41]     *Id.*

[42]     *Id.*

[43]     *Id.* at 821.

[44]     *Id.*

[45]     *Id.* at 822.

construe this statement to mean that collateral estoppel cannot be used in cases, like his, involving verdicts of "guilty but mentally ill."

Our discussion above indicates that a "guilty but mentally ill" verdict, unlike an acquittal by reason of insanity, does not act to negate criminal intent. We disavow any contrary meaning in the dicta Lane quotes from *Burcina*. In fact, this case and *Burcina* are similar: just as the nolo contendere plea in *Burcina* precluded relitigation of the mental state required for the crime for which the plaintiff was convicted, so here the "guilty but mentally ill" verdict precludes relitigation of whether Lane committed the crimes for which he was convicted, and whether, in so doing, he acted knowingly and recklessly.

A more recent Indiana case parallels *Burcina*. The court in *Rimert v. Mortell* considered a case in which a man had been found guilty but mentally ill for four murders in South Carolina; his mother then sued an Indiana psychiatrist for having negligently released him from in-patient care.[46] One of the issues on appeal was whether Indiana public policy prevented the defendant from recovering damages based on conduct for which he was criminally culpable.[47] Looking to South Carolina law for the legal effect of the "guilty but mentally ill" verdicts in that state, the court concluded that the defendant's conviction, "despite its misleading label, contemplates complete criminal responsibility for the killings."[48] The court applied collateral estoppel to the "guilty but mentally ill" verdicts, holding that "[t]herefore, [the defendant] may not successfully

---

[46]    680 N.E.2d 867, 869 (Ind. App. 1997).

[47]    The Indiana court cites our decision in *Burcina* as one of the cases supporting such a public policy. *Id.* at 873.

[48]    *Id.* at 875.

- 13 -                                    **6929**

claim that his action should survive the public policy bar because his mental condition rendered him not fully responsible for the killings."[49]

On this issue Alaska law is the same as South Carolina's, as the statute authorizing the "guilty but mentally ill" verdict, AS 12.47.030(a), explicitly states that "[a] defendant found guilty but mentally ill is not relieved of criminal responsibility for criminal conduct." The jury in the criminal case found that Lane possessed the mental state necessary to warrant a conviction; Lane was therefore not relieved of his "criminal responsibility" despite his mental illness. We conclude that the "guilty but mentally ill" verdict has the same collateral estoppel effect that any other guilty verdict would have. The superior court did not err in applying collateral estoppel in its grant of summary judgment on the issue of liability.

## V.     CONCLUSION

We AFFIRM the judgment of the superior court.

---

[49]      *Id.* at 876.